Number 18-2152 May it please the court. Sanford Weisburst for the appellant, L'Eqwd. Bleaching is a chemical treatment that is performed on hair. Can you reserve five minutes of your time for me, please? I'd like to reserve four minutes, please, Dr. Draynor. Four, okay. Thank you. Bleaching uses a high pH formulation to open up the hair's outside layers so that hydrogen peroxide can enter and remove the natural pigment from the hair. It is conducted at a very high pH. This was, because it opens the hair and removes the pigment, it has a side effect of causing damage to the hair because the hair has been swelled, opened up, it becomes somewhat rough. In the prior art, the processes that were used to deal with that problem were, after the bleaching treatment, to apply an acidic or low pH solution to smooth the hair. Now this was an imperfect solution because it was addressing damage after the fact. I think we have, we understand the background of the patent here. Can you get right to the copying issue? Yes, Your Honor. The copying issue here, as an initial matter, I think it's very important to recognize that the PTAB found, as a matter of fact, and this is at appendix page 45, that L'Oreal did copy Liquid's invention. Now L'Oreal is the world's largest beauty company. Liquid is a small upstart. So it found that there was a factual finding on that. Yes. It shows that. But it found that the copying was of a confidential patent application, I believe. That's right. It was a confidential... Is that patent application? As I understand it, it's the parent application. Is that right? It's, yes. It is. Is it not an identical? It's cited on the... Does it have an identical specification to the patent in suit? The specification is slightly different, but it's broad enough to encompass the actual specification of the patent in suit. Both are in the record, Your Honor. I've read them both. Yes. To me, they look to be essentially identical. There might be some additional... Yes. We believe, for all intents and purposes, they are sufficiently identical to support our arguments here. Now, why did the PTAB, after making this factual finding, reject copying? It was because, as Judge Rayna mentioned, the PTAB said, citing this Court's decision in Iron Grip Barbell, you have to copy an actual product. It's not sufficient to copy a patent. Now, I think it's important to underscore, this was not copying of a public patent. Iron Grip Barbell was concerned copying doctrine might get so broad if we extend it to every published patent, because everyone in the world theoretically has access... I thought what Iron Grip was saying that, you know, you can't prove copying just by showing that the accused device is identical to what's in the patent. There has to be something more than just infringement. Am I right about that? Yes. There has to be more than just a public patent and being within the scope of that patent, and then you just assume the rest. Absolutely, Iron Grip Barbell said that, but we do have more here. What we have is we have a meeting, took place in May 2015. It's described around Appendix 3011 by Mr. Kristol, who's the head of Liquid. And then we also have Mr. Kristol saying, and this is unrefuted, that L'Oreal reviewed that unpublished application at this May 2015 meeting, and then we have L'Oreal launching its own product containing malic acid within the scope of the patent about a year later in August 2016. So you said the board has found that there was copying here, and the board, that has not been contested on appeal, right? As a factual matter, well, L'Oreal does contest the board's factual finding here. We think that it's supported. There is a contest on that, but in terms of the PTAB decision itself, in our view, rested entirely on a legal analysis of what Iron Grip Barbell, and I think it's important to mention this court has held in other cases, and I would mention Dupuis Spine, as well as the specialty composites case, that copying of a patent can provide evidence of copying. So this court has gone that far in those cases, but this case we think is a fortiori from those cases, because this is not just copying a public patent. The only people in the world who had access to this application in May 2015 were L'Oreal, Liquid, and the PTO. The world did not. Do you understand what the policy could be behind the idea that copying for purposes of obviousness is only relevant if it's copying of a device that's out there, an actual product or an actual method that's being used? So I'm having a hard time understanding what the policy would be behind that. Why it is that you would distinguish copying of a commercial product or method versus copying of a patent. If there's copying, aren't they all relevant? Do you understand what the board's rationale was or what anybody's rationale was? I don't exactly understand it. I think what the board may have been getting at is that there's easier access to a public patent, go on a website, look at the patent, than there might be to a product where you have to actually acquire the product. But frankly, if it's a publicly available product, anyone could acquire that as well. And I believe this court has actually mentioned something along those lines in a few of its cases. But I think the board was specific in saying that the patent application was confidential, correct? I think the board did understand that. But as a legal matter, what the board failed to do is understand the relevant legal distinction between an unpublished application and a public patent, which this court, again, in Dupuy-Spine and in specialty composites, involved a public patent. And we think our case is even stronger in the case of an unpublished because there's a stronger inference of access and copying that doesn't make copying such a broad doctrine as to apply to every public patent. And I think that that is a legitimate concern. So if it were easy to have access to any public patent by going on a website and looking at the patent, or any public product by just going and looking at buying the product in reverse engineering, you should have to show something more. But again, we have done that, both because it's unpublished, because it was handed across the table at this May 2015 meeting, and because L'Oreal launched its products after some eight years from the prior art that it says makes this invention so obvious. And if Your Honor will permit me, I'd like to just turn briefly to- Can I ask you another question about copying? Looking at the board's opinion of JA 46, there's one sentence, and it says, the evidence of record shows that the information petitioner obtained from patent owner related to patent owner's technology generally, not to any product that embodied the claims. Is it possible that the board is talking about nexus here, and saying that you didn't satisfy your duty to show nexus? I don't think so, Judge Stoll. I think what the board was getting at there was, as a factually correct matter, there is no product produced by Liquid or its licensee, Olaplex, that uses malleic acid. So there was no product existed to be copied. So the only thing that could have been copied was the technology as described in the patent application. But to the extent I'm wrong about that, and the board was referring to nexus, the word nexus doesn't really even appear in the board's decision, so I'm reluctant to make that inference. But I do want to point out some strong evidence of record for nexus, and I think, don't take it from me, take it from L'Oreal itself at Appendix 2908, where in connection with its own product, it talks about malleic acid having hair repair effects. And so L'Oreal itself has made this link between malleic acid being used at the same time as a bleaching formulation and having this beneficial effect. That's the nexus. Can I say something? If there isn't nexus, just assuming for a minute, that would create a written description problem, wouldn't it? Because whether there's a nexus between this parent application and the claims would be the same question as whether your current patent application has written description support for the claims, right? Since the specifications are virtually identical. I'm not suggesting there isn't a nexus. I'm just saying, isn't it so that that's what you'd have to conclude? I mean, this is not a situation, this is a situation where you've got a patent specification that's identical to the specification from which the claims came. So why wouldn't there be a nexus? That's what I'm suggesting. I agree. I think that there absolutely would be a nexus, and there is a nexus, based on both that application from May 2015, which talks about using malleic acid in a bleaching formulation at the same time as the bleaching treatment, and the specification in the 419 patent, and L'Oreal's advertisement, and to mention one other record site. Is that example four in your specification that specifically does that? Yes. Yes. As well as the claims. Quite clearly, claim one is all about a method for bleaching hair. That's the very first words. Now, I think it's important, you know, we can't, we obviously do focus on copying. We think that's legal error. It's not even implicating the substantial evidence standard, because it's a legal error here, and we don't even need to go back to the board either for a factual finding, because we already have the factual finding. Is it legal error? Do you think that the board articulated a new standard with respect to copying? I think that the board misunderstood iron grip barbell, and so I would respectfully suggest yes. The board gave an incorrect reading to iron grip barbell, which, if it were correct, would bring the standard in conflict with Dupuis spine and specialty composites, as well as cases involving process patents, and we've cited Institut Pasteur and the Litton case on that point, because our case is not even a product patent. It's a process patent, so you couldn't infringe it based on. Look at page 45 of the record. Page 45, page 30 of the, and the last paragraph. I don't know if this is what Judge Stoll was reading before, but if it is, I'm sorry for the repetition. It says, we are not persuaded, however, that Petitioner's development of its product due to access of non-public information about the patent owner's patent application, as opposed to about the patent owner's products, amounts to copying of the kind that is evidence of non-obviousness. My concern is that that appears to be a statement, a restatement of the standard of copying, and that you can never, this type of evidence can never be copying that is evidence of non-obviousness. In other words, that if you copy a non-public information taken from a patent owner's application, it can never by itself be evidence of non-obviousness. Right. And our position is that to the extent that is the standard, number one, we don't think it's supported by Iron Grip, Barbell, Red, in the context of all this Court's other cases. And number two, that that's an incorrect standard. It would drastically narrow the copying doctrine to always require that you got a product on the market, you took it back to your workshop, and you did some sort of reverse engineering. If that's not your argument, then you're out of luck. You can never present copying. Now, very briefly, I don't want to, I would like to reserve some rebuttal time, but I'll go into it for just a minute. Prior art, our central point is that you're talking about high pH processes on the one hand and low pH on the other. We think that the copying certainly informs that, but we think that the Board also lacks substantial evidence. And we've made other objective indicia arguments as well. One is that the long-felt need, and I think that that's very factually powerful in this case. We, the most recent prior art was in 2008. This is a long-felt need that was felt for decades because of the damage caused by bleaching. And yet, we don't have the liquid invention until 2014. There's a long passage of time. There was a dispute over the exact priority date. Our position is that the Board did not follow its precedent in Polaris Wireless in terms of what the petitioner has to do in its petition. And with that, unless the Court has any other questions for now, I'll reserve. Okay, thank you. Counsel O'Brien? Good morning, Your Honors. And may it please the Court, I'm Michelle O'Brien for Appley L'Oreal USA. I want to address the issue that you raised with regard to copying, and Judge Stoll, in particular, your question as well about that you can't prove copying just by showing infringement And Iron Grip Barbell does, in fact, say that there needs to be some evidence in other cases as well. The Appleby Samsung case says the same thing. Access plus subsequent alleged access, because L'Oreal does dispute that there was access to any alleged patent application in this case. This is an issue that's highly disputed in the related district court case. But in this case, Liquid is alleging nothing more than allegedly access, and then also alleging infringement. One point in regard to your point, Judge Stoll, about nexus is the board at Appendix 44 did not find that the L'Oreal products are within the scope of the claim, and therefore, as a matter of law, there can be no nexus. And I think that the board's finding with regard to... Where is that on page 44 that you're pointing to? It's right in the middle, the end of that first paragraph. We do not conclude that those products necessarily fall within the scope of the claims. So the other point with regard to the board's finding on copying and its reliance on Iron Barbell, we believe the board's argument or position here was that Liquid failed in meeting its burden of production on identifying with any specificity whatsoever what was copied. There is just a... And this goes to the board's comments that it was the, quote, patent invention or, quote, technology generally that was copied. It is under the Galderma case, it is Liquid's burden or the patent owner's burden to identify with specificity what the allegations of secondary indicia are, and that does not then transfer back to the petitioner or L'Oreal in this case to respond to unless they've met their burden. And earlier, Judge Rina read a portion of the board's opinion at page 845 about how we are not persuaded that petitioner's development of its products due to access to non-public information about patent owner's patent application as opposed to about patent owner's products amounts to copying of the kind that is evidence of non-obviousness. Do you agree with that distinction that the board is making there between the copying of a patent owner's products versus a patent owner's patent application? Well, as an initial matter, we don't agree with the board's finding that the products were developed as a result of access. I know that, but setting that aside, do you agree with this statement of the law? So I think that here the board is following the precedential cases that it cites in its record. I think that the cases hold that there has to be, for there to be copying, there has to be some actual specific product or something identified in order to satisfy the copying requirement. Why does it have to be a product, though? Can't it be a process that you copied rather than just infringed? I think that it could be. So I know you don't agree, but hypothetically, it seems like that the board made findings that kind of support that here, but got rid of, but still didn't find copying because it believed there had to be a product. It said L'Oreal had access to this private patent application that describes the process, and maybe it didn't make the next finding that it could have or should have that L'Oreal copied that process. But hypothetically, if that's what happened, you got access to a private application that described a specific process, and there's evidence showing that you copied that process,  Don't dispute the facts. I won't, of course. I have two points. Hypothetically, if your situation was the fact here, then I think that I go back to the failure of evidence by the patent owner, the party alleging that it was copied, in identifying anything that was copied. So as far as what was copied... Wait, but you're kind of disputing the facts. I mean, the facts of the hypothetical were you actually did copy a process from the patent application. You're saying in this case, the patent owner hasn't shown anything specific that you copied, just that generally that you had access to the patent application and what you came up with ultimately might infringe that. But that's different than hypothetical, which is you had access to the application and you did actually copy a process therein. In that case, wouldn't that be evidence of copying? I don't know if that would be evidence of copying that would support a case of prime facial obviousness, or non-obviousness, I should say. But why? Because I think that the cases that are currently being followed are suggesting that there has to be something specific. What more specific could you have than a fact finding, again, hypothetically, that you copied a specific process from a patent application that nobody else had access to? Okay. And I think maybe what I'm missing here in the hypothetical, and I apologize, I'm trying to not answer your question, is are we also assuming that there is actual evidence? Or is this, again, just an access plus copying situation? No. I mean, that's the point of that. I think you're right. Access plus potential infringement seems to me to be a pretty slim read for copying. Right. Access plus maybe internal documentation from L'Oreal that says, look at this process here, this is pretty good, let's copy it. Isn't that copying? Well, in that hypothetical situation, I think that, and assuming this is some third party, then yes, I think that you could make a case for copying with those facts. As something to be considered, even though I think we've said that copying alone is usually not good enough to overcome a very strong prima facie case of obviousness. That is correct. That is correct. That is correct. The other thing that we believe with- But isn't the error here by the board that it didn't apply that right legal standard for copying, and that it should have looked and seen whether the evidence here supported copying by L'Oreal as opposed to just an inference of copying because of access. It didn't make any of those conclusions. It said, I think applying a wrong standard, you only have copying if it's copying of a product. I don't think that we would even need to get to that question in this case for several reasons. One of which is, as I said before, I believe that the board's reference or discussion of copying the technology generally shows that liquid failed to meet its burden of production on the secondary indicia prong with regard to copying. And then the second point there is because the board did not find that the products were in the scope of the claim, I don't think that nexus can be established. Isn't this the problem here that the board just tossed out the question of copying because a specific product was not copied? So the board said it's irrelevant. For the issue of non-obviousness, copying in this case is irrelevant because it wasn't a specific product. It was something else. It was the application. And if that's wrong, and it seems to me that you agree, you're saying that if that was interpretation, it was a wrong interpretation by the board. I don't think so, Your Honor, because there is no additional evidence that there was actual copying in this case. And in fact, the evidence... But there's a finding. There's a finding of actual copying. So we believe that the... And the board said, we're not going to consider it. It's irrelevant. And we believe that the board's refusal to give evidentiary weight to the laboratory notebook was a legal error. The reason that they said they weren't giving weight to the notebook, which showed that L'Oreal was in possession of a bleaching process using malic acid a month before this alleged access, was because the purpose for which the malic acid was being used in the bleaching process wasn't clear to them. But the purpose is irrelevant because it's not in the claim. The claim is simply a method of bleaching hair with malic acid in it. So it doesn't matter why L'Oreal did it. They were doing it a month ahead of time. You can't copy what they already have. Your point, as I understand it, is that we shouldn't have to address this legal error by the board. Correct. Instead, you think that there's sufficient evidence and record for us to conclude that the board erred in finding that you didn't copy. But if we disagree with you, just hypothetically, if we disagreed with you, you would agree that at a minimum there needs to be a vacate and remand, right? No, I don't. Why not? So I think there are several reasons why this does not need to be remanded, besides the fact that the board, or the board, I apologize, that Liquid did not satisfy its burden of production and the burden never shifted to L'Oreal to refute that on any of the, either of the two secondary indicia positions that it took, long felt need, which the board... Well, we're just talking about copying right now. Right. And copying. So on either of those, they never met their burden of production. So the secondary indicia question goes away. The board has concluded, the board concluded that there was copying by L'Oreal. So why didn't they meet their burden of production? Because they didn't identify with any specificity what was copied. And as a result, they could not... Yeah, they did. The method of using maleic acid. They never identified that. The first time in this record that they have said what was copied is in the reply brief in this appeal. The board did not have any information in front of it. If the board says in its final written determination that we cannot consider evidence of copying if what was copied was information or information taken from a patent application and not a specific product. Is that error? I'm sorry. Can you repeat that, please? Okay. If the board has said that any evidence of copying is irrelevant if it's not copied from a specific product, is that an erroneous statement of our law? I don't believe that it is. I think that there are more variables that need to be considered. So if you copy a method, which is not a specific product, if you copy a method, that can never be considered as... No, no. I didn't say that. I think what I meant... Well, I'm asking now. Right. What I meant was copying a specific process... Can copying of a method qualify as objective indicia of non-honestness? If all of the other requirements are met, which they aren't here. For example, the failure to show any actual evidence of copying. And as I say, L'Oreal already had... So are you essentially arguing that the board, even though it might have erred in the way it legally described the secondary consideration, it still can be affirmed because there is insufficient evidence of copying to provide a secondary consideration because all we have is a finding of access and a finding of something else, I guess. And no finding of the products being within the scope of the claim. So really all they found was... So access alone shouldn't be considered copying. It has to be more direct evidence that you actually had access to something and you actually copied something specific there. Yes. Can I ask you one other thing?  How do I read the sentence on page 30 of the board's opinion where it says, the preponderance of the evidence suggests that the petitioner used malic acid because of its access to patent owner's non-public information rather than because of petitioner's own independent development. Isn't that identifying a specific thing that at least the board thinks was copied? And I understand your other arguments. I just want to make sure I understand the specific point you're taking about not knowing exactly what was copied. So to that point, Your Honor, if that is what the board bases the finding of copying on, the board also found that the use of malic acid in a bleaching process was already in the prior art. Ogawa, Kitabata, and KR 564 already used malic acid in a bleaching process. And for the nexus to be established, they have to connect it to some novel aspect of the prior art. Okay. Thank you. Mr. Wiseman, you have two minutes. Thank you, Judge Reyna. I'd like to start with what the evidence was. I think it's pretty clear that the board understood that this technology generally was a synonym for the application, the unpublished patent application. And beyond that, though, absolutely liquid made this showing, satisfied its burden of production in the PTAB, and I'd refer the court to Appendix 3012, and briefly I'll read it. This is Mr. Kristol's declaration concerning the meeting in May 2015. This declaration was not refuted by L'Oreal. I told petitioner's representatives that cheaper alternatives to Olaplex's active agent were contained in the patent application that I had earlier given to Ms. Allard. Petitioner's representatives spoke with Dr. Presley and asked him questions. Ms. Allard asked how we determined which compounds, including maleic acid, were effective and which were not. This is important because it's not just access. Yes, they had access, but then they asked questions about it. They were very interested in this point. They asked questions at the meeting, and this is an access plus case, absolutely, and we believe that the board looked at all of that, looked at this declaration, which was the key evidence of copying, and made its finding at page 45 that Judge Stoll referenced. Now, there was discussion about whether... If maleic acid was in the prior art, how is that evidence of secondary consideration when you're considering the same thing? Maleic acid was not in the prior art in the way that it is in the 419 patent, and let me try to explain why. Maleic acid in... So there's two... Basically, there's four prior art references, and there's two on the one hand and two on the other. Ogawa and Kitabata both mention maleic acid, but they're not using it for hair repair. They're using it for pH adjustment, and they're using it for chelating of metals. The two patents that did use maleic acid for a process that's similar to repair, although it was after the fact, are KR-564 and Berkemer. Now, the key distinction in the prior art, why those never came together, is because you couldn't mix... The prior art did not teach mixing a high pH process, which is Ogawa and Kitabata, with a low pH process. But even if the court thinks that the evidence is somewhat inequitable... Yeah, I'm sorry, I didn't mean to open up the obviousness argument. I should have told you to assume I agree with the board that there's strong evidence of obviousness. If that strong evidence includes the very thing you're talking about was copied, why is that a relevant secondary consideration? We would submit that cases from this court, such as Millennium Pharmaceuticals, cited in our brief, require the court always to consider secondary considerations before reaching a determination of obviousness. But we also respectfully disagree that the board had any evidence, much less substantial evidence, that you could combine. Can I just ask you, try asking it one more time? Yes. If the prior art they relied on is correct and provides a strong prima facie case of obviousness, and the one element, and I know this is all hypothetical, you don't agree with all this, the one element that you alleged them to have copied malate acid is in the prior art, how can that ever be a strong enough secondary consideration to overcome a prima facie case? Well, taking the hypothetical that there is a very strong prima facie case, it might be difficult to overcome it. However, we don't think the case is so strong. I'm hesitant to resist Your Honor's hypothetical, but I have to just make clear my position. We think that the prior art is far from clear on combining a high pH process and a low pH process. Given that, at best for L'Oreal, equipoise on that issue, copying had to be considered. It was considered, as a matter of fact, by the PTAB. They legally erred, and this court should reverse. Thank you, Your Honor. Okay, we thank all the parties for their arguments, and just as a reminder, this court's now going to go into a brief recess and will reconvene and will reconstitute as a different panel for purposes of the next argument, which will be Quake versus Lowe. This court's now in recess.